**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| CLARA SELLERS and HENRY L. SELLERS, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:11-CV-3955-RWS |
| | : | |
| BANK OF AMERICA, NATIONAL ASSOCIATION as SUCCESSOR BY MERGER to LASALLE BANK, NATIONAL ASSOCIATION, as TRUSTEE for CERTIFICATE HOLDERS of BEAR STEARNS ASSET BACKED SECURITIES, INC., SERIES 2001-3; EMC MORTGAGE CORPORATION; and JOHN DOES 1 through 10, | : : : : : : : : : : | |
| | : | |
| Defendants. | : | |

**<u>ORDER</u>**

This case comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint [4].  After a review of the record, the Court enters the following order.

**Background**[1]

---

[1]As the case is before the Court on a motion to dismiss, the facts alleged in the Complaint are taken as true.  <u>Cooper v. Pate</u>, 378 U.S. 546, 546 (1964).

In September 1997, Plaintiffs entered into a mortgage transaction with New American Financial, Inc. ("New American").  Compl., Dkt. [1] ¶ 14. Plaintiffs executed a promissory note in favor of New American secured by the Plaintiffs' residence.  Id.  In March 2001, Plaintiffs entered into a refinance transaction with First Union National Bank of Delaware ("First Union"). Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), Dkt. [4-1] at 3.[2] First Union subsequently transferred the mortgage to Bank of America.  Id.  In June 2011, EMC Mortgage Corporation ("EMC") sent a "Foreclosure Sale Notice" and "Initial Communications Letter" to Plaintiffs.  Compl., Dkt. [1] ¶ 15.  EMC initiated foreclosure proceedings on August 3, 2011, id. ¶¶ 76-77, presumably following Plaintiffs' default, Defs.' Mem., Dkt. [4-1] at 3.

Plaintiffs initiated this pro se civil action on November 17, 2011, alleging various causes of action arising from the attempted foreclosure of Plaintiffs' mortgage.  Compl., Dkt. [1] ¶¶ 75-133.  On December 12, 2011, Defendants moved to dismiss the Complaint on grounds that it is an impermissible shotgun pleading that fails to comply with the pleading requirements of Rules 8 and 9(b) of the Federal Rules of Civil Procedure and for failure to state a claim upon

---

[2] Few factual allegations are raised in the Complaint.  Because the Motion to Dismiss is unopposed, the Court repeats certain factual allegations raised in the Motion for purposes of clarity in the Background section.

which relief can be granted pursuant to Rule 12(b)(6).  Defs.' Mem., Dkt. [4-1] at 1, 4-5.  Because Plaintiffs did not file a response, the Defendants' motion is deemed unopposed.  LR 7.1(B), NDGa.[3]

## Discussion

### I.      Shotgun Pleading

First, Defendants assert that the Complaint is an impermissible shotgun pleading that fails to comply with the pleading requirements of the Federal Rules of Civil Procedure.  Defs.' Mem., Dkt. [4-1] at 5-6.  A shotgun pleading is one that "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."  Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).  A shotgun pleading also refers to pleadings that are "replete with factual allegations and rambling legal conclusions."  Osahar v. U.S. Postal Service, 297 F. App'x 863, 864 (11th Cir. 2008).

---

[3] Local Rule 7.1(B) provides that "[a]ny party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than fourteen (14) days after service of the motion . . . .  Failure to file a response shall indicate that there is no opposition to the motion."

AO 72A
(Rev.8/82)

The Eleventh Circuit has repeatedly condemned the use of shotgun pleadings for "imped[ing] the administration of the district courts' civil docket." PCV Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010).  Such pleadings require the court to sift through rambling, often incomprehensible allegations to separate the meritorious claims from the non-meritorious in a "massive waste of judicial and private resources."  Id. (citation omitted).  The Eleventh Circuit has established that shotgun pleadings are an unacceptable form of establishing a claim for relief.  Strategic Income Fund, 305 F.3d at 1296.

The Court agrees with Defendants that the 133-paragraph Complaint is a shotgun pleading and could be dismissed for failing to meet the pleading requirements of Rules 8(a)[4] and 9(b)[5] of the Federal Rules of Civil Procedure. Indeed, Plaintiffs assert numerous, often irrelevant causes of action and allege few, if any, facts to support them.  In most cases, the appropriate response to a shotgun pleading is to dismiss it and allow the plaintiff an opportunity to amend

---

[4] Rule 8(a) provides that "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

[5] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

to provide greater specificity.  <u>Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.</u>, 77 F.3d 364, 366 (11th Cir. 1996).  However, in light of Plaintiffs' <u>pro</u> <u>se</u> status, the Court will consider the merits of the Complaint rather than dismiss and require Plaintiffs to replead.

## II.    Legal Standard for a Motion to Dismiss

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a federal court is to accept as true "all facts set forth in the plaintiff's complaint."  <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  The court must also draw all reasonable inferences in the light most favorable to the plaintiff.  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (internal citations omitted); <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).   However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  <u>Id.</u>

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond

5

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Twombly</u>, 127 U.S. at 561 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires factual allegations to "raise the right to relief above the speculative level."  <u>Id.</u> at 556. The plausibility standard "does not[, however,] impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  <u>Id.</u>

However, because Plaintiffs are acting <u>pro se</u>, their "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."  <u>Tennenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998).  "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action."  <u>Thomas v. Pentagon Fed. Credit Union</u>, 393 F. App'x 635, 637 (11th Cir. 2010).

Utilizing the foregoing framework, the Court considers Defendants' Motion to Dismiss as to each of the nine courts enumerated in Plaintiffs' Complaint.  As noted by Defendants, each count seems to be predicated on one of four allegations: (1) that the attempted foreclosure was wrongful; (2) that Plaintiffs are entitled to production of the original loan documents; (3) that

Plaintiffs are victims of predatory lending; and (4) that Defendants have breached the Pooling and Servicing Agreement ("PSA") entered into among Defendants.  Defs.' Mem., Dkt. [4-1] at 4.  The Court considers, in turn, each count raised in the Complaint.

> A.    <u>Attempted Wrongful Foreclosure (Count One)</u>

In Count One of the Complaint, Plaintiffs raise a claim for attempted wrongful foreclosure, alleging that Defendants lacked legal authority to foreclose on Plaintiffs' residence.  Dkt. [1] ¶¶ 13, 76-77.  Defendants move to dismiss the claim on the grounds that (1) the security deed provided Defendants with the express right to foreclose on the property in event of default, and (2) Plaintiffs have failed to allege damages—an essential element of the claim for attempted wrongful foreclosure.  Defs.' Mem., Dkt. [4-1] at 22-23.

To state a claim for attempted wrongful foreclosure under Georgia law, a plaintiff must show that a creditor "knowing[ly] and intentional[ly] publ[ished] [] untrue and derogatory information concerning the debtor's financial condition, and that damages were sustained as a direct result of this publication."  <u>Aetna Fin. Co. v. Culpepper</u>, 320 S.E.2d 228, 232 (Ga. Ct. App. 1984).  The Court agrees with Defendants that Plaintiffs, while alleging that Defendants lacked authority to foreclose, have failed to sufficiently plead a

cause of action for attempted wrongful disclosure.  Specifically, Plaintiffs have not alleged sufficient facts to show with plausibility that Defendants knowingly published untrue and derogatory information about Plaintiffs' financial condition or that Plaintiffs suffered damages—the two essential elements of the claim.  Accordingly, Plaintiffs' claim for attempted wrongful foreclosure is **DISMISSED**.

>    B.    "Suppression" (Count Two)

In Count Two of the Complaint, Plaintiffs raise a claim for fraudulent non-disclosure, which claim Plaintiffs refer to as "suppression," alleging that Defendants failed to disclose: (1) that Plaintiffs qualified for loan products other than the one they were sold; (2) that Defendants' benefitted financially from the sale of the particular loan product Plaintiffs purchased; (3) that the loan Plaintiffs purchased was "high cost and predatory"; (4) that Plaintiffs would qualify for loans with lower rates and lower costs; and (5) that Defendants were not acting in Plaintiffs' best interests.  Dkt. [1] ¶ 80.  Defendants move to dismiss the claim on grounds that Plaintiffs' allegations fall short of the pleading standard for fraud under Rule 9(b) and that, in any event, Plaintiffs' claim is barred by the statute of limitations.  Defs.' Mem., Dkt. [4-1] at 16.

To comply with the Rule 9(b) requirement that fraud be pled "with particularity," a plaintiff must allege: "(1) precisely what statements were made in what documents or oral representation or what omissions were made [;] (2) the time and place of each such statement and the person responsible for making (or, in the case of an omission, not making) same [;] (3) the content of such statements and the manner in which they misled the plaintiff [;] and (4) what the defendants obtained as a consequence of the fraud." U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2010).  That is, to avoid dismissal, a complaint alleging fraud must plead the "who, what, when, where and how" of the alleged fraud.  Mathis v. Velsicol Chemical Corp., 786 F. Supp. 971, 976-77 (N.D. Ga. 1991).

The Court agrees with Defendants that Plaintiffs have failed to satisfy the pleading requirements of Rule 9(b).  Plaintiffs have not alleged sufficient facts to establish the "who, what, when, where and how" of Defendants' alleged fraudulent non-disclosure.  Additionally, under Georgia law, a claim for fraud based on non-disclosure is subject to a four (4) year statute of limitations. O.C.G.A. § 9-3-31; Anthony v. Am. Gen. Fin. Servs., Inc., 626 F.3d 1318, 1321 (11th Cir. 2010); Majeed v. Randall, 632 S.E.2d 413, 416 (Ga.  Ct. App. 2006). Plaintiffs received their original mortgage in September 1997.  Compl., Dkt.

[1] at 5.  Plaintiffs then filed this action over thirteen years later in November of 2011.  Defs.' Mem., Dkt. [4-1] at 4.  As such, Plaintiffs' fraud claim concerning the mortgage, even if properly plead, would be time-barred.   Accordingly, Count Two is **DISMISSED** for failure to state a claim upon which relief may be granted.

C.   Extended Manufacturer's Liability Doctrine (Count Three)

In Count Three of the Complaint, Plaintiffs purport to raise a claim under the Georgia Extended Manufacturer's Liability Doctrine.[6]  Dkt. [1] ¶ 88. Plaintiffs allege that the "mortgage sold to them was . . . unreasonably dangerous and defectively designed" and that the mortgage was "likely to create a default."  Id.  Defendants move to dismiss this claim on grounds that O.C.G.A. § 51-1-11.1 is inapplicable to mortgage loan transactions.  Defs.'

---

[6] Plaintiffs specifically reference O.C.G.A. § 51-1-11.1, which provides that:

(a) As used in this Code section, the term "product seller" means a person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs; maintains; or otherwise is involved in placing a product in the stream of commerce.  This definition does not include a manufacturer which, because of certain activities, may additionally be included within all or a portion of the definition of a product seller.

(b) For purposes of a product liability action based in whole or in part on the doctrine of strict liability in tort, a product seller is not a manufacturer as provided in Code Section 51-1-11 and is not liable as such.

AO 72A
(Rev.8/82)

Mem., Dkt. [4-1] at 8 n.6.  The Court agrees with Defendants that O.C.G.A. § 51-1-11.1 does not apply to the facts of this case, and Plaintiffs have failed to cite any authority to the contrary.  Count Three is **DISMISSED** for failure to state a claim upon which relief may be granted.

> D.      Breach of Contract (Count Four)

In Count Four of the Complaint, Plaintiffs assert a claim for breach of contract.  Dkt. [1] ¶ 97.  Plaintiffs allege that they are intended third-party beneficiaries of the PSA entered into among Defendants.  Id. ¶ 96.  Plaintiffs further allege that Defendants breached the PSA by not actively engaging in "loss mitigation" to prevent foreclosure of Plaintiffs' property.  Id. ¶ 95.  Defendants move to dismiss this claim on grounds that Plaintiffs are not intended third-party beneficiaries of the PSA and therefore do not have standing to sue to enforce it.  Defs.' Mem., Dkt. [4-1] at 18.

A non-party to a contract may only enforce the contract if it clearly appears from the contract that it was intended for the non-party's benefit.  City of Atlanta v. Atl. Realty Co., 421 S.E.2d 113,118 (Ga. Ct. App. 1992) (citation omitted); Northen v. Tobin, 585 S.E.2d 681, 686 (Ga. Ct. App. 2003).  "The mere fact that [the third-party] would benefit from performance of the agreement is not alone sufficient."  Armor Elevator Co. v. Hinton, 443 S.E.2d

11

670, 672 (Ga. Ct. App. 1994) (citation omitted).  "Although the third-party beneficiary need not be specifically named in the contract, the contracting parties' intention to benefit the third party must be shown on the face of the contract."  Tobin, 585 S.E.2d at 686.

Plaintiffs have failed to plead any facts to show that Defendants intended Plaintiffs to be third-party beneficiaries of the PSA.  Because Plaintiffs have failed to make a plausible showing that they are intended third-party beneficiaries to the PSA, they cannot maintain a cause of action arising from its breach, if any.  Thus, Plaintiffs' claim for breach of contract is **DISMISSED**.

E.    Negligence Per Se (Count Five)

In Count Five of the Complaint, Plaintiffs raise a claim for negligence per se based on allegations of "predatory lending."  Dkt. [1] ¶ 100.  Specifically, Plaintiffs contend that Defendants made a loan that they knew or should have known was unfair, failed to consider Plaintiffs' ability to repay, did not consider Plaintiffs' source of income, and sold Plaintiffs a loan with predatory characteristics, such as having high costs and imposing prepayment penalties. Id.  Defendants move to dismiss on multiple grounds, including that Plaintiffs have failed to cite to any authority demonstrating that allegations of "predatory lending" are actionable as negligence, and that, in any event, Plaintiffs have

12

failed to allege any facts to establish the essential elements of a negligence claim.  Defs.' Mem., Dkt. [4-1] at 14.

"In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty."  John Crane, Inc. v. Jones, 604 S.E.2d 822, 825 (Ga. 2004).  The Court agrees with Defendants.  Assuming arguendo that conduct constituting "predatory lending" is even actionable, Plaintiffs have failed to allege sufficient facts to demonstrate with plausibility that "predatory lending" occurred in this case.  Furthermore, Plaintiffs have failed to allege facts to show that Defendants' conduct, which allegedly constitutes "predatory lending," is actionable as negligence.  Specifically, Plaintiffs have failed to allege a duty, cognizable under Georgia law, that Defendants owed to Plaintiffs and that Defendants breached by engaging in alleged acts of "predatory lending."  Accordingly, Count Five is **DISMISSED**.

F.    Civil Conspiracy (Count Six)

In Count Six of the Complaint, Plaintiffs raise a claim for civil conspiracy, alleging that Defendants engaged in "an unlawful combination and conspiracy to originate, raise, and service a mortgage loan through a pattern and

practice of predatory lending." Dkt. [1] ¶ 104.  Defendants move to dismiss on grounds that Plaintiffs have failed to allege any facts to show that Defendants conspired with each other.  Defs.' Mem., Dkt. [4-1] at 22.

Under Georgia law, a conspiracy is "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means."  U.S. Anchor Mfg. v. Rule Indus., 443 S.E.2d 833, 855 (Ga. 1994) (citations omitted).  "The essential element of the alleged conspiracy is proof of a common design establishing 'that two or more persons in any manner, either positively or tacitly, arrive at a mutual understanding as to how they will accomplish an unlawful design.'"  Tyler v. Thompson, 707 S.E.2d 137, 141 (Ga. Ct. App. 2011) (citation omitted).  The Court finds that Plaintiffs have not plead any facts plausibly showing that Defendants conspired together or arrived at any mutual understanding regarding Plaintiffs or the loan transaction at issue.  Plaintiffs' claim for civil conspiracy is therefore **DISMISSED**.

G.     "Respondeat Superior" (Count Seven)

In Count Seven of the Complaint, Plaintiffs claim that Defendants Bear Stearns Asset Backed Securities, Inc. ("Bear Stearns") and LaSalle Bank, N.A. ("LaSalle") are liable for unspecified acts of non-party First Union under a

14

theory of <u>respondeat</u> <u>superior</u>.  Dkt. [1]  ¶¶ 108-109.  Defendants move to

dismiss on grounds that Plaintiffs have failed to plead any facts showing that

First Union was an agent of Bear Stearns and LaSalle.  Defs.' Mem., Dkt. [4-1]

at 8 n.6.  The Court agrees that Plaintiffs have failed to plead facts

demonstrating that First Union was an agent of Bear Stearns and LaSalle.

Therefore, these Defendants cannot be held liable for any acts of First Union on

the basis of <u>respondeat</u> <u>superior</u>.  Count Seven therefore is **DISMISSED** for

failure to state a claim upon which relief may be granted.

     H.    <u>Negligent Hiring, Training, and Supervision (Count Eight)</u>

     In Count Eight of the Complaint, Plaintiffs assert a claim for negligent

hiring, training, and supervision, alleging, in wholly conclusory fashion, that

"defendants breached its duties to properly train and/or supervise its personnel

and breached its duty to implement sufficient controls."  Dkt. [1] ¶ 112.

Defendants move to dismiss on grounds that Plaintiffs "fail to allege <u>any</u> facts

tending to show <u>how</u> Defendants breached this purported duty, or even <u>what</u>

duty Defendants owed Plaintiffs."  Defs.' Mem., Dkt. [4-1] at 8 (emphasis in

original).  Georgia law provides that "[a]n employer has a duty to exercise

'ordinary care not to hire or retain an employee the employer knew or should

have known posed a risk of harm to others where it is reasonably foreseeable'

that the employee's tendencies could cause the type of harm sustained by the plaintiff." Remediation Resources, Inc. v. Balding, 635 S.E.2d 332, 335 (Ga. Ct. App. 2006) (citation omitted). The Court agrees with Defendants that Plaintiffs have failed to allege any facts to state a claim for negligent hiring, training, and supervision. Therefore, Count Eight is **DISMISSED**.

> I.     "Produce the Note"

While not enumerated as a separate count, it appears, as Defendants surmise, that Plaintiffs are attempting to state a claim based on Defendants' alleged failure to produce Plaintiffs' original promissory note. Compl., Dkt. [1] ¶¶ 18-19, 21. Specifically, Plaintiffs purport to state a claim based on a "produce the note" theory under the Real Estate Settlement Procedures Act ("RESPA"),[7] the Fair Debt Collection Practices Act ("FDCPA"),[8] and under Georgia common law. In an abundance of caution, Defendants have addressed, and move to dismiss, each of these claims to the extent they are asserted in the Complaint. The Court thus considers whether Plaintiff has stated a claim upon which relief may be granted based on Defendants' alleged failure to produce Plaintiffs' promissory note.

---

[7] 12 U.S.C. §§ 2601 et seq.

[8] 15 U.S.C. §§ 1692 et seq.

16

i.      *"Produce the Note" and Georgia Common Law*

Throughout the Complaint, Plaintiffs allege that Defendants are required to "prove that they are in fact owners of the [Plaintffs'] mortgage note and that they have the present right to foreclose" by producing the "'wet ink' signature promissory note." Dkt [1] ¶¶ 18, 29, 23, 61.  Defendants contend, however, that they are under no obligation to do so under Georgia law.  Defs.' Mem., Dkt. [4-1] at 10.  The Court agrees.

As Defendants correctly argue, Georgia law does not require a lender to produce the original loan document even when the lender is taking affirmative action such as commencing a foreclosure proceeding.  See, e.g., Watkins v. Beneficial, HSBC Mortg., No. 1:10-CV-1999-TWT-RGV, 2010 WL 4318898, at *4 (N.D. Ga. Sept. 2, 2010) (noting that Georgia law does not require the "lender commencing foreclosure proceedings to produce the original note"); Hill v. Saxon Mortgage Servs., Inc., No. 1:09-CV-1078, 2009 WL 2386057, at *1 (N.D. Ga. May 14, 2009) (rejecting plaintiff's demand that the lender produce the original promissory note).  Accordingly, Plaintiffs have failed to state a claim for relief under Georgia common law based on Defendants' failure to produce the promissory note.

17

ii.      *"Produce the Note" and RESPA*

As stated above, Plaintiffs also allege that Defendants have violated

RESPA by failing to produce the original promissory note in response to

Plaintiffs' purported Qualified Written Request ("QWR").  Compl., Dkt [1] ¶

19.  Defendants move to dismiss on the grounds that a communication

demanding production of the original promissory note does not qualify as a

QWR under RESPA, and in any event, that Plaintiffs have failed to allege

damages.  Defs.' Mem., Dkt. [4-1] at 11-12.

Under RESPA, a QWR is defined as a "written request from the borrower

(or an agent of the borrower) for information relating to the servicing of [a

federally related mortgage] loan."  12 U.S.C. § 2605(e)(1)(A).  Among other

things, a QWR must "include[] a statement of the reasons . . . that the account is

in error or provide[] sufficient detail to the servicer regarding other information

sought by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).  Section 2605(e) of

RESPA requires a loan servicer to provide a written response to a borrower's

QWR within 20 days and take any necessary action within 60 days.  12 U.S.C.

§ 2605(e).  Accordingly, in order to state a claim for violation of RESPA, 12

U.S.C. § 2605(e), a plaintiff must allege facts showing that: "(1) the defendant

is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the

18

defendant failed to adequately respond within the statutory period of 20 days or 60 days, and (4) the plaintiff is entitled to actual or statutory damages." Jones v. Vericrest Fin., Inc., No. 1:11-CV-1171-TWT-CCH, 2011 WL 7025915, at *15 (N.D. Ga. Dec. 7, 2011) (construing 12 U.S.C. § 2605).

Here, even assuming Plaintiffs' correspondence constitutes a valid QWR, Plaintiffs have nonetheless failed to allege sufficient facts to state a claim under RESPA.  In particular, Plaintiffs have failed to allege either (1) actual damages from Defendants' allegedly inadequate response or (2) a pattern or practice of noncompliance with RESPA section 2605 so as to be entitled to statutory damages under section 2605(f).  See 12 U.S.C. § 2605(f); Frazile v. EMC Mortg. Corp., 382 F. App'x 833, 836 (11th Cir. 2010) ("[A]n allegation [of damages] is a necessary element of any claim under § 2605."); Habib v. Bank of America Corp., No. 1:10-CV-04079-SCJ-RGV, 2011 WL 2580971, at *4 (N.D. Ga. Mar. 15, 2011) ("In the absence of any alleged causal link between the claimed damages and [defendant]'s alleged RESPA violation, plaintiff has failed to state a RESPA claim.").  Accordingly, Plaintiffs' have failed to state a claim under RESPA based on Defendants' alleged failure to produce the promissory note or otherwise properly respond to Plaintiffs' purported QWR. Any such claim accordingly is **DISMISSED**.

19

iii.     *Fair Debt Collection Practices Act (FDCPA)*

Finally, Plaintiffs allege that Defendants failed to produce the promissory note in response to a "Debt Validation Notice" that Plaintiffs sent to Defendants in July 2011.  Compl., Dkt. [1]  ¶¶ 16, 21.  In an abundance of caution, Defendants construe this allegation as an attempt to raise a claim under the FDCPA, which provides a "Validation of Debts" procedure.  Defs.' Mem., Dkt. [4-1] at 12 (citing FDCPA, 15 U.S.C. § 1692g).  Defendants move to dismiss on several grounds, including that the FDCPA's Validation of Debts procedure, contained at 15 U.S.C. § 1692g, governs communications "sent by the *creditor* to the *debtor* in order to establish the amount of the debt, to whom the debt is owed, and several disclosures legally required to be given to the debtor."  Defs.' Mem., Dkt. [4-1] at 12 (emphasis in original).

The Court agrees with Defendants that the FDCPA's Validation of Debts provision does not put Defendants under any obligation to produce Plaintiffs' original promissory note.  Accordingly, to the extent Plaintiffs have attempted to state a claim under the FDCPA based on Defendants' alleged failure to produce the note, such claim fails as a matter of law and must be **DISMISSED**.

J.     "Joint Venturer Liability" (Count Nine)

In Count Nine of the Complaint, which is entitled "Joint Venturer

Liability," Plaintiffs seek injunctive relief against all Defendants.  Dkt. [1] ¶¶ 116-17.  A party seeking injunctive relief must plead four prerequisites: "(1) that there is a substantial likelihood that the plaintiff will prevail on the merits; (2) that there is a substantial threat of irreperable harm to the plaintiff if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm that an injunction may do to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest." Suntrust Bank v. Houghton Mufflin Co., 252 F.3d 1165, 1166 (11th Cir. 2001) (citations omitted).  In light of the Court's rulings in Parts A-I, supra, granting Defendants' Motion to Dismiss as to each of Plaintiffs' claims, Plaintiffs have failed to show a substantial likelihood of success on the merits of any claim. Accordingly, Plaintiffs are not entitled to injunctive relief.

## Conclusion

In accordance with the foregoing, Defendants' Motion to Dismiss Plaintiffs' Complaint [4] is hereby **GRANTED**.  The Complaint is accordingly **DISMISSED WITH PREJUDICE**, and the Clerk is directed to close the case.

AO 72A
(Rev.8/82)

**SO ORDERED**, this __21st__ day of May, 2012.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)